## Patterson, et al. v. Davis, etc.

(Decided February 28, 1913.)

### Petition for Writ of Prohibition.

1. **Courts—Act of 1910 Providing for Holding Circuit Court in Third Class City Situated More Than Ten Miles from County Seat—Objections to Act—Application for Writ of Prohibition to Prevent Holding of Court in Such City.**—Pursuant to an act of the Legislature of 1910 permitting the holding of circuit court in cities of the third class being more than ten miles from the county seat, the City of Middlesboro provided the courthouse, jail, vaults for the preservation of papers, etc., filed its written petition addressed to the judge of the Bell circuit court asking him to order and direct the holding of court as provided for in the act. Thereafter a number of citizens and taxpayers of Pineville, the county seat, and of Bell County, filed a remonstrance against the order prayed for, but which order the judge granted. They say no appeal is provided for and deny that the City of Middlesboro has made suitable provision for the holding of courts; allege that its ordinance is void because passed at a called meeting; that it incurred an indebtedness exceeding the revenue provided for such year, and that the act is void because it provides it shall take effect upon the approval of some other authority than the general assembly. Held: It is well settled that this court will consider an application for a writ of prohibition whenever it is alleged that an inferior court is acting outside of its jurisdiction, or is about to do so.

2. None of the petitioners are residents or taxpayers of the City of Middlesboro, and are consequently not in position to raise any question as to the validity of any ordinance passed by the council of that city, or any action taken by it looking to the creation of an indebtedness not authorized by law. Under the provisions of section 18 of the Code, the petitioners cannot raise any of these questions.

3. As to the contention that the distance may be lessened by the removal of the Pineville courthouse, or the Middlesboro postoffice, it is sufficient to say that it is too problematical to demand the serious attention of the court.

4. As to the contention that the act is void because in violation of section 60 of the Constitution because it provides that it shall take effect upon the approval of some authority other than the general assembly, it is not the act itself which is not put into immediate effect, but it is the machinery of the court which is not to be put into operation until the things prescribed in the act are

done. The mandate of the legislature was imperative when it provided that court *shall* be held in such cities.

O'REAR & WILLIAMS, for plaintiffs.

THORNWELL G. ANDERSON and HAZELRIGG & HAZELRIGG, for respondents.

OPINION OF THE COURT BY JUDGE TURNER—Refusing the Writ.

This is an original proceeding in this court by certain officials and residents of Pineville, Kentucky, the county seat of Bell county, asking for a writ of prohibition against Wm. T. Davis, Circuit Judge of the Twenty-sixth Judicial District, prohibiting him from holding circuit court, or any term or part of term thereof at Middlesboro in said county.

In 1910 the Legislature of Kentucky passed the following Act:

"Sec. 1.   That in any county of this Commonwealth having therein, or that may hereafter have therein, a city of the third class, not a county seat, and being more than ten miles from the county seat, the distance to be measured from the court house at said county seat to the post office of said third class city, and along the most convenient and usually traveled route, the circuit courts of such counties shall be held alternately so as to divide the time between the county seat, and the said third class city, as the business may require, the first part of each term as now provided by law to be held at the county seat, and the other part of the term to be held at said third class city.

"It shall be the duty of the Judge of the circuit court of the judicial district, in which said third class city is situated, to cause to be summoned and impaneled grand and petit juries, and in all things to conduct the said court in said third class city in the same manner as provided by law for holding courts in the county seats of the county in which the third class city is located; Provided, however, that said circuit court may adjourn the grand or petit jury selected for the holding of courts at either of said places to the other.

"All civil cases brought and prosecuted in said county, shall be tried in the court nearest where the defendant resides, the distance to be measured along and by the most convenient and usually traveled route.   Where there are two or more defendants, part of whom reside

near the county seat, and part nearer to the said third class city, the case may be tried at either place. In all cases the court shall have a liberal discretion, and may try any case at either place, where the ends of justice and convenience of the greater number of parties and witnesses may be subserved and the decision of the court in this regard shall be final, and not subject to exception, or review on appeal.

"'Criminal cases shall be tried at the place nearest where the offense was committed, provided, if the court be of the opinion that the ends of justice would be better subserved thereby, he may try any criminal case at either of said places, and it shall not be a ground of appeal or reversal that any such case was tried at one place when it should have been tried at the other.

"Any third class city coming within the provisions of this act shall be entitled to its benefits, whenever suitable provision is made by said city for furnishing a court room, a safe and suitable vault and depository for all books, papers and records pertaining to the said circuit court and any other expense to the county, and whenever it is made to appear to the Circuit Judge that said city has made the necessary provisions for holding said court, as provided in this act, it shall then be the duty of said Judge, upon application of said third class city, on the first day of the first term after filing said application, to enter an order directing the latter portion of said term, and each term thereafter to be held in said third class city; and all cases shall be assigned for trial at one or the other of said places of holding said court, in accordance with the terms of this act.''

Middlesboro is a city of the third class, and in other respects comes within the class described in the act.

In the petition as amended, it is alleged in substance, that the city of Pineville is the county seat of Bell county, that the city of Middlesboro is also in Bell county and is a city of the third class; that by the most convenient and usually traveled route between Pineville and Middlesboro, the court house in Pineville is a greater distance than ten miles from the post office in Middlesboro, but that the location of the post office at Middlesboro is temporary and subject to removal at any time by the officials of the United States Government; that it is within the power of the Fiscal Court of Bell county and the voters thereof, to change the location of the court house

in the city of Pineville, so as that the distance between the court house and the post office in Middlesboro would be less than ten miles, and that, therefore, the validity of the act would depend upon, not only the will and discretion of the authorities of the United States Government, but of the Fiscal Court and the voters of Bell county.

That the city of Middlesboro on the 12th day of June, which was before the first day of the September term, 1912, of the Bell Circuit Court, presented and filed its petition addressed to the Judge thereof, asking him to order and direct the holding of the latter part of the September term, 1912, and of all future terms of said court in the city of Middlesboro, and setting forth in said petition that Middlesboro is a city of the third class coming within the provisions of the act above named, and that it had made suitable provisions for holding said court at Middlesboro by furnishing court room, safe and suitable vault, and a depository for the books, papers and records pertaining to the holding of sessions of court at Middlesboro, and for all other expense to the county.

That, thereafter, a number of citizens and tax payers of Pineville and Bell county filed in said court a remonstrance against the granting of the said order as prayed for; that thereupon the judge of the Bell Circuit Court ordered and directed the latter part of the September term, 1912, and the latter part of all subsequent terms of that court to be held in the city of Middlesboro. They say that no appeal is provided by law from the said judgment or order of the Bell Circuit Court aforesaid. They deny that the city of Middlesboro has made suitable or any provision, and allege that the ordinance enacted by the city of Middlesboro is void, because it was passed or adopted at a special called meeting thereof, and pleaded that the ordinance incurred an indebtedness of the city for an amount exceeding the revenue provided for such year and that the same had not been submitted to the voters of the city, and that the indebtedness attempted to be assumed by the city for the county was not authorized by law, and that the ordinance is void.

Numerous other allegations are made with reference to the bonded and other indebtedness of the city of Middlesboro.

They further urge that the act is void and unconstitutional because it provides that it shall take effect

upon the approval of some other authority than the General Assembly.

The respondent, Davis, Judge, filed his general demurrer to the petition as amended, and the city of Middlesboro appeared, and upon its motion was made a party respondent herein, and both the city and Davis, Judge, filed their responses setting forth in substance, that the Judge of the Bell Circuit Court had made the order directing the latter part of all future terms of that court to be held at Middlesboro, and was in making such order acting under and by virtue of the provisions of the act of the Legislature aforesaid, and within his jurisdiction and power as said Judge; that in accordance therewith said court had been actually held at Middlesboro for the last two weeks of the September term, 1912, thereof; that the city of Middlesboro at an expense of some fifty or sixty thousand dollars had provided a suitable building for holding circuit court therein, with all necessary rooms, vaults and offices for the safe keeping of records, and for the use of officials, litigants, lawyers, witnesses, etc., and had provided a new and secure jail with steel cages therein for the safe keeping of prisoners, and had turned over the possession thereof to the circuit court, and that the maintenance and up-keep thereof, heating, lighting, janitor service, etc., had all been provided for by the said city of Middlesboro.

Under this state of the record, we find presented these questions, to-wit:

1. Can this proceeding be maintained in this court under the provisions of section 110 of our constitution.

2. Could the petitioners, none of whom are residents of or tax payers in the city of Middlesboro, raise any question as to the validity of any ordinance passed by that city incurring any indebtedness, or raise any question about the action of that municipality incurring an indebtedness.

3. Does the fact that at some future time it is possible by the removal of either the court house in Pineville or the post office in Middlesboro, or both, that there may be less than ten miles in distance between them by the usually traveled route, defeat the operation of the act.

4. Do the provisions of this act bring it within the inhibition in section 60 of the constitution providing that

no law shall take effect upon the approval of any other authority than the General Assembly.

### I.

Section 110 of our constitution expressly provides that this court shall have appellate jurisdiction only, but that it shall have power to issue such writs as may be necessary to give it a general control of inferior jurisdictions. It is the view of the petitioners in this proceeding that the act of the Legislature is void because it is within the inhibition prescribed in section 60 providing that no law shall be enacted to take effect upon the approval of any other authority than the General Assembly, and that, therefore, the Judge of the Circuit Court was acting outside of his jurisdiction in entering the order requiring court to be held at Middlesboro, and consequently, it is within the power of this court to issue a writ prohibiting him from taking such action.

This question has been before this court in numerous cases and it seems to be well settled that this court will consider an application for writ of prohibition whenever it is alleged that an inferior court is acting outside of its jurisdiction, or about to do so. In the case of Weaver v. Tonye, 107 Ky., 426, this court was considering an application for a writ of prohibition and there this same question was made, and the court in passing upon it said:

"It must be regarded as settled law that in proper cases, where the inferior tribunal is proceeding out of its jurisdiction, the power of this court may be invoked to stay the exercise of such jurisdiction; and it would also seem, in certain classes of cases, that even where the inferior tribunal has jurisdiction this court may likewise interfere, if the remedy by appeal is not entirely adequate, or if the court, in the exercise of its discretionary powers, shall deem it necessary to so interfere."

### II.

None of the petitioners are residents or taxpayers in the city of Middlesboro, and are consequently not in position to raise any question as to the validity of any ordinance passed by the council of that city, or any action taken by that municipality looking to the creation of an indebtedness not authorized by law, and for that reason, no valid judgment in their favor growing out of any such cause of action could be rendered. Under

the express provisions of our Code, section 18, every action must be prosecuted in the name of the real party in interest with certain exceptions not herein involved. Under that same action this court held in the case of Lytle v. Lytle II., Metcalfe 127, that no judgment should be rendered in favor of one who was not the real party in interest. The petitioners are not in position to raise any of these questions.

The fact that at some time in the future there is a remote possibility by either the removal of the courthouse at Pineville or the postoffice at Middlesboro, or both of them, to some obscure corner in one or the other, or both of these cities, which would bring them within ten miles of each other, is too problematical and speculative to demand serious attention at the hands of the court. It will be time to raise that question when any such condition actually arises; sufficient unto the day is the evil thereof.

## IV.

Section 60 of our constitution provides among other things: "No law * * * shall be enacted to take effect upon the approval of any other authority than the General Assembly" with certain exceptions which are not here involved. It is urged with great earnestness and some plausibility that the act in question is to go into effect *only* when the third-class city coming within its provisions shall provide a suitable court room, vault and depository, and *only* when the Circuit Judge shall upon application of said third-class city showing these facts enter an order directing a portion of each term of court to be held therein, and that therefore, the going into effect of the act is made to depend upon some other authority than that of the General Assembly.

It is insisted in support of this view, that the act on its face leaves it discretionary with the authorities of the third-class city whether they shall provide the facilities for holding court therein, and thereby leaves it within the option of such city to say whether the act shall go into effect; and, further, that if at any time in the future the city should become dissatisfied with the holding of court within its limits, it might discontinue the same by refusing to provide further accommodations therefor. It is true the act seems to assume that any third-class city coming within its provisions would be glad to furnish

the facilities as provided therein, and provides for no compulsory processes by which the court might compel it to do so; but it cannot be doubted that if such third-class city had refused to furnish the facilities as prescribed by the act, or had failed to do so in a reasonable time, it would be within the inherent power of the Circuit Court by proper processes and orders to compel it to do so either upon its own initiative, or upon application in a proper proceeding of any citizen and taxpayer of such third-class city. It would likewise be within the power of the court, and would indeed be its imperative duty, to enforce by all necessary orders the provisions of the act with reference to the expense of holding court in a third-class city, as well as to require from such city all things contemplated by the act necessary to keep the machinery of the court in motion.

It is not the act itself which is not put into immediate effect; upon its very face it goes into effect immediately; but it is the machinery of the court which is not to be put into operation in such a city until the things prescribed in the act are done; it is only left to the Circuit Judge to enter an order—not to put the act into effect— but to say that the things have been done which the act requires to be done before the machinery of the court shall be put in operation in a third-class city; in other words, the act goes into effect immediately, but the holding of court in any given third-class city is to begin only after due preparation therefor has been made.

On its face, the act is mandatory as to the holding of Circuit Court in such cities. It provides: "The Circuit Courts of such counties *shall* be held alternately so as to divide the time between the county seat and the third-class city." There is nothing equivocal or uncertain about such language, and it cannot be construed to mean that it shall not go into effect immediately, or that it shall be left to the municipalities involved whether court shall be held therein. It says that it *shall* be so held, and as above indicated the court under the provisions of the act can compel the municipality to make all necessary provisions preliminary thereto.

A city could not afford to go to the expense of thousands of dollars preparatory to holding circuit court therein upon the *mere hope* that the Legislature might pass an act authorizing the same; nor would the Legislature be guilty of suddenly and without notice, requir-

ing circuit court to be held in a city where there was no courthouse, no vaults for the preservation of records, no jail for the safe-keeping of prisoners and no arrangement whatever for the convenience of the officials, litigants, lawyers or witnesses. The refinements of reasoning in determining such questions of constitutional interpretation must give way before broader and more practical views. It would indeed have been little short of absurd for the city to have gone to all this expense before the passage of the act; as it would have been almost equally impracticable for the Legislature to have provided for the holding of court therein immediately upon the going into effect of the act and before any suitable provision therefor could have been made.

The mandate of the Legislature was imperative when it provided that court *shall* be held in such cities; it left nothing to the discretion of either the cities or the Circuit Judge. The other provisions thereof were designed merely to give to the cities the opportunity to provide the necessary facilities for holding the courts therein, before they were compelled to do so by compulsory processes.

The writ is denied.